RICHARD HAYWARD AND THOMAS H. AUSTIN, PLAINTIFFS IN ERROR, VS. CHARLES LEBARON, ADMINISTRATOR OF GEO. L. FAUNTLEROY, DECEASED, DEFENDANT IN ERROR.

The law which obtains in a place at the time the contract is made, enters into and forms a part of such contract, as fully as if it was incorporated therein.

Where there is a loan of Bank notes which, though depreciated at the time, yet serve and pass as money, both the borrower and the lender acting *bona fide* and innocently, regarding and treating the notes as money, and there is no

shift or device to cover a loan of money, and thus evade the statute against usury, the transaction is not usurious.

Usury cannot result from the act and intention of one of the parties to the contract alone;—both must concur in the same design—the lender must agree to accept and the borrower to give the usurious interest.

This case was brought up by writ of error from the Circuit Court of Leon County, under the following state of facts, viz :

1st. The note or memorandum which was filed as the cause of action, and offered and read as evidence, was given by defendants to J. H. T. Lorimer, the agent of Geo. L. Fauntleroy, upon the consideration of a loan or deposit of fifteen hundred dollars in bills of the Union Bank of Florida, which at the time were at a discount of about eight per cent. for par funds, but which were generally received and paid in Middle Florida in payment of debts. This loan or deposit, it was admitted, was not made with any corrupt intent to evade the statute of usury.

The note or memorandum referred to as the cause of action was in these words, viz :

Borrowed from J. H. T. Lorimer, Att'y for Geo. L. Fauntleroy, fifteen hundred dollars, payable on demand.

$1,500. (Signed) HAYWARD & AUSTIN.

Tallahassee, May 25, 1839.

2d. The note was delivered to LeBaron, as administrator of Fauntleroy, and as part of the assets of his estate. LeBaron placed it in the hands of Austin, one of the plaintiffs in error, prior to the Spring term, 1842, of Leon Superior Court. The latter placed it, together with other notes due to LeBaron as administrator, in the hands of an attorney. Suit was not brought by the attorney upon the note in question, because, according to his recollection, it was expected to be paid out of collections by him on claims in favor of Hayward & Austin which had been put in his hands for suit.

3d. It appeared and was admitted that the Union Bank had, previous to the date of said note, suspended payment in specie, and has continued suspended ever since, and is now insolvent.

Upon the foregoing state of facts, the Court gave judgment for the plaintiff (LeBaron) in the Court below, for the amount of the note, with interest from the time of the demand proved.

To which judgment the defendants excepted.

*Walker & Hayward* for plaintiffs in error—

1st. The general rule is, that a loan of depreciated Bank paper at its nominal value, taking or reserving the legal rate of interest upon such value, constitutes usury. 8 Smedes & M., p. 533, 2 J. J. M., p. 140, 2 Peters, 527.

2d. The absence of a *corrupt intent* to evade the statute of usury, does not take *this case* out of the statute. 9 Peters, p. 378, Marsh vs. Martindale, 3 B. & P., 158, 5 Randolph, p. 132, 12 Smedes & M., p. 286, 4 Florida, p. 119, 4 J. J. M., p. 48-87, 1 Yerger, p. 244, 2 Harr. & Gill, p. 13, 3 Iredell, p. 415, 522, 5 Iredell, 698.

3d. The fact that the money lent passed currently in the payment of debts in Middle Florida, does not take this case out of the statute. 5 Iredell, p. 698, 8 Smedes & M., p. 533-543.

*Archer* and *Hogue* for defendant in error—

Cited and relied upon the case of Bank of the U. S. vs. Waggoner. 9 Peters, 378.

*Baltzell* for plaintiffs in error, replied, and contended—

1st. That the judgment should have been for $1380 principal, that sum being the cash value of $1500 of nominal amount of Union Bank bills loaned.

2d. That the statute of this State prohibits the taking,

" directly or indirectly," above the rate of eight dollars for the loan of one hundred dollars for one year, &c., and says nothing about corrupt intent.

THOMPSON, *Justice*, delivered the opinion of the Court.

The question in this case is whether the contract, which is the foundation of the action, is tainted with usury or not. The Supreme Court of the United States in the case of the Bank U. S. vs. Waggoner, (9 Peters, R. 399,) says : " To " constitute usury within the prohibitions of the law, there " must be an intention knowingly to contract for or to take " usurious interest, for if neither party intend it, but act " *bona fide* and innocently, the law will not infer a corrupt " agreement. Where indeed the contract on its very face " imports usury, as by an express reservation of more than " legal interest, there is no room for presumption, for the " intent is apparent—*res ipsa loquitur*. But where the con- " tract, on its face, is for legal interest only, then it must " be proved that there was some corrupt agreement or de- " vice, or shift, to cover usury, and that it was in the full " contemplation of the parties." These distinctions thus laid down are fully sustained by the cases cited in the de- cisions of the English Courts.

In the case at bar, it is not pretended there was any ex- press agreement for any particular rate of interest, and the inquiry must be, whether upon the facts set forth in the bill of exceptions, any corrupt and unlawful bar- gain, loan, exchange or shift, by which usurious in- terest was reserved, is to be inferred. The facts of the case show that the consideration of the note sued upon was fifteen hundred dollars in the bills or notes of the Union Bank of Florida, computed at their nominal value, but which were then at a discount, for specie, of about

eight *per centum ;* that said bills or notes were generally received and paid in Middle Florida, where the transaction occurred, in the discharge of debts ; that the Bank had suspended specie payments, has never resumed, and was then (at the time of trial,) insolvent. It was also admitted that in the transaction there was no intention to evade the statute of usury. Do these facts constitute a case of usury ? A number of cases in the State Courts of the States of the Union have been cited by counsel for plaintiffs in error to maintain the affirmative of the proposition, but as this transaction took place while Florida was a Territory of the General Government, and the Supreme Court of United States had jurisdiction by appeal and writ of error, over the judiciary established in the Territory, and its judgments upon common law principles were of binding force and obligation therein, we feel bound, in the decision of this case, to be governed by the decisions of that high tribunal.

The decision of the case of the Bank of the U. S. vs. Waggoner, was made in 1835, and the contract in this case was made in 1839, and the latter must be presumed to have been made with reference to the former. The law which obtains in a place, at the time a contract is made, enters into and forms a part of such contract, as fully as if it was expressly incorporated therein.

In the case cited, the Court puts the case distinctly upon the ground, whether there was an intended loan of money and a reservation of illegal interest, and a shift or device to cover it, and evade the law by advancing something other than money upon the loan : in other words, whether the parties intended usury, and made use of any shift or device to cover a loan of money; or whether they intended in good faith a loan of bank notes, which to the lender were of the full value of their numerical amount,

and were so treated *bona fide* by the borrower. In that case, the good faith of the parties in the transaction, and the absence of the corrupt intention to evade the statute, were gathered from the facts of the case, and when so ascertained, the conclusion of the law was applied that the statute had not been violated.

Here, in the case before us, the absence of the unlawful and corrupt intention is expressly admitted; and who is there so competent to know the true character of the contract as one of the parties thereto? For it will be recollected that usury cannot result from the act and intention of one of the parties to the contract alone, but that both must concur in the same design; the lender must agree to accept, and the borrower to give the usurious interest; and this is the rule whether the contract be upon an express reservation of more than the legal rate, or it be the result of a shift or device to evade the statute in the pretended bargain and sale or exchange of any goods, bank notes, or any other commodity whatever.

We would be fully warranted, upon the authority before cited, to rest an affirmance of the judgment upon the admission in the record of the good faith of the contract; but when this admission is coupled with the other facts of the case, the conclusion is irresistible of the perfect innocency of the transaction: indeed we cannot find " a loop to hang a doubt upon."

Fauntleroy was possessed of Bank notes, depreciated it is true, eight per centum, if he desired to convert them into specie, because of the suspension of the Bank, yet generally current in the payment of debts, and of course available to him to this extent; he lends them to the plaintiffs in error for their promissory note, and there is nothing to negative the presumption that the Bank notes were not equally available in the hands of the borrowers for the same

purpose—no pretence of any loss or sacrifice in the disposition actually made of the notes.

The Supreme Court, in the case cited, says : " Because " an article is depreciated in the market, it does not follow " that the owner is not entitled to demand or require a " higher price for it, before he consents to part with it. " He may possess Bank notes, which to him are of par " value, because he can enforce payment thereof, and for " many purposes they may pass current at par, in payment " of his own debts, or in payment of public taxes, and yet " their market value may be far less.

" If he uses no disguise, if he seeks not to cover a loan " of money under the pretence of a sale or exchange of " them, but the transaction is *bona fide* what it purports to " be, the law will not set aside the contract, for it is no vio-"lation of any public policy against usury." We do not wish to be understood as holding that a loan of Bank notes depreciated in value may not be a cover or cloak for an usurious transaction, but merely that such a contract is not disclosed in this case.

If it had appeared from the evidence that the plaintiffs in error were embarrassed, and pressed by executions, or other urgent demands, and had applied to the agent of Mr. Fauntleroy for a loan of money to relieve their necessities, and depreciated Bank notes had been put upon them as the condition of the loan, and they had accepted them because, under the pressure of their circumstances, they were compelled to have money though at a sacrifice, the cloak or device to cover the usury would have been apparent, and the protestations of innocence of both parties would afford no protection against the conclusion of law. If Fauntleroy, in making this contract, designed to play the usurer, we find in the facts of this case no such cupidity and un-

hallowed love of gain as the imagination would portray, incident to such a character.

The small discount of eight per centum is all the difference between the notes loaned and specie coin, amounting to a gain of one hundred and twenty dollars ; he takes the borrowers note *payable* on demand, not reserving any interest ; he then quietly remains for nearly three years before he makes a demand, and puts the debt upon interest. If he had really intended the unlawful gain which is supposed by counsel for plaintiffs in error, he would have made the demand at an early period, possibly the very next day, which he might have done. But his carelessness on the subject of interest, leaving the borrower to enjoy the loan, if such it be, for two years and seven months, without interest, is, of itself, a strong circumstance to repel the intention to violate the statute.

Upon the whole case, we are perfectly satisfied that the judgment of the Court below was correct, and it is affirmed with costs.