The Griffing Bros. Co. v. Winfield—Syllabus.

THE GRIFFING BROTHERS COMPANY, A CORPORATION, PLAINTIFF IN ERROR, V. T. A. WINFIELD, DEFENDANT IN ERROR.

PLEADING — DEMURRER — TENANT DISPUTING LANDLORD'S TITLE—CONTRACTS BY CORPORATIONS—CORPORATE SEAL—RULE OF DAMAGES FOR BREACH OF CONTRACT TO CARE FOR AND CULTIVATE GROVES OF FRUIT TREES—PROSPECTIVE DAMAGES WHEN RECOVERABLE—INTEREST RECOVERABLE. IN SUIT FOR DAMAGES—SET-OFF—CHARGES TO JURY.

1.  In a suit for the recovery of damages for the breach of a written contract under seal a plea is bad and subject to demurrer that sets up matter which seeks to vary the terms and patent import of such written contract, and when to establish such matter would require parol evidence or evidence *dehors* the written contract itself.

2.  When suit is brought to recover damages for breach of a contract that establishes between the contracting parties, plaintiff and defendant, the relationship of landlord and tenant, the defendant tenant in undisturbed possession cannot as a defense controvert the plaintiff landlord's title to the premises that formed the subject of such contract.

3.  In a suit for damages for breach of a written contract to care for and cultivate a grove of fruit trees, it is no defense that the plaintiff did not care for and cultivate an adjacent grove of similar fruit trees that were not included in the contract so well as the defendant cared for and cultivated the grove included in the contract. In such a case the terms of the written contract between the parties is the only criterion and measure of the defendant's duty.

4.  Unliquidated damages resulting from a tort cannot be made available as a set-off in an action for breach of a written contract.

5. A demurrer cannot reach simply a defective *part* of a plea, but must stand or fall as the plea is good or bad *as a whole*, therefore, when a plea is good in part and bad in part, the proper remedy is a motion to strike the objectionable features.

6. Courts do not take judicial notice of the seals of private corporations, nor do such seals prove themselves, but where it is shown or admitted that the instrument is signed for the corporation by its proper officer the presumption is that it was duly executed, which presumption includes the authenticity of the seal used in its execution.

7. The rule is well established that unless its character or governing statute requires it a corporation may contract and bind itself without the use of its corporate seal in all cases in which individuals can bind themselves without the use of a seal.

8. Growing fruit trees are considered as part of the land, and where damages are claimed for breach of a contract to take care of and cultivate fruit trees upon land for a term of years, the difference between the value of the land at the date of the end of the term contracted for in the event the defendant had faithfully complied with his contract, and its lesser value at said date resulting from the failure of the defendant to comply with his contract, is the correct measure of damage in such a case.

9. When a cause of action accrues there is a right, as of that date, to all the consequent damages that will ever ensue. Such damages, without reference to the time they actually accrue, are entire and cannot be recovered piecemeal by successive actions, it is, therefore, often necessary to take into consideration damages that have not been actually suffered either at the commencement of the suit or at its trial.

10. Interest is recoverable in Florida upon the amount of damages awarded in an action of tort or in an action for breach of a contract, from the date of the accrual of the ~~cause~~ of action.

11. Charges of the court to juries must be confined to the issues and must be predicated upon facts in proof.

This case was decided by Division B.

Writ of Error to the Circuit Court for Dade County.

The facts in the case are stated in the opinion of the court.

*Price & Rand,* for Plaintiff in Error;

*R. H. Liggett* and *W. W. Irwin,* for Defendant in Error.

TAYLOR, J.: T. A. Winfield, the defendant in error, hereinafter referred to as the plaintiff, sued The Griffing Brothers Company, a corporation, the plaintiff in error, hereinafter referred to as the defendant, in the circuit court of Dade county in an action for damages for breach of a contract whereby the said Winfield leased to the defendant a tract of land in Dade county, upon which was located an orange grove, for the purpose of growing between the rows of grove trees nursery stock of various kinds for sale, said lease to continue for a term of three years, and whereby, in consideration of the use of said land for such purpose, the defendant agreed to take care of the grove trees thereon so long as nursery stock was grown between them, and to do everything necessary for

their development, such as budding, pruning, spraying, etc., and to fill out all missing places, and replace all trees not growing well with budded trees, the said lessor to furnish fertilizer for the grove trees at such times as is considered advisable, the same to be applied by the defendant company. The trial resulted in a verdict and judgment for the plaintiff, and the defendant brings this judgment here for review by writ of error.

To the declaration as amended the defendant first interposed two pleas in abatement. The first of these pleas set up as a defense that the land embraced in said contract of lease was not owned by the plaintiff in his individual capacity, but was owned by him and a third party, a stranger to the suit, as copartners, and that such third party should have been joined as a party plaintiff. The second of these pleas alleged that there was another suit pending in said circuit court in chancery in favor of the said Winfield and one R. H. Liggett as complainants against the said defendant complaining of the same breach of the same contract and praying for an injunction and for the assessment of damages for the same alleged breach of said contract, and for a decree subjecting the nursery stock of the defendant growing on said land to the payment of such damages as may be so assessed.

To the first of these pleas in abatement the plaintiff demurred on the grounds that the facts set up therein constituted no defense to the action; and because the facts set up therein fail to show a non-joinder of any party who has a right to join in the prosecution of the action; and because the said plea was frivolous. The court sustained this demurrer, and this ruling constitutes the first assignment of error. There is no merit in this assignment.

The instrument whose breach is complained of is in writing and under seal and is incorporated as a part of the declaration in the cause. It is on its face and by its terms a contract between T. A. Winfield and The Griffing Brothers Company, a corporation, alone. The matter set up in the first plea seeks to vary the terms and patent import of such written instrument, and to establish such matter would require parol evidence or evidence *dehors* the written contract itself. Such a plea is bad on demurrer. Solary v. Stultz, 22 Fla. 263; Booske v. Gulf Ice Co., 24 Fla. 550, 5 South. Rep. 247. Besides this, the contract sued upon establishes the relationship between the parties of landlord and tenant in undisturbed possession and the first plea is an attempt by the tenant in such undisturbed possession to question the title of his landlord, and it is elementary that under such circumstances a tenant cannot controvert his landlord's title. Bigelow on Estoppel (5th ed.) 506, *et seq.;* 2 Taylor's Landlord & Tenant (9th ed.), section 705 and cases cited; Schaefer v. Henkel, 75 N. Y. 378.

The second assignment of error complains of the ruling of the court striking two additional pleas of the defendant numbered one and two, and part of an additional plea numbered four. The only feature of this assignment that is argued here, the other features thereof being expressly abandoned, is the striking by the court from the 4th additional plea of the following clause therefrom: "That adjoining said grove turned over to defendants under said contract was a similar grove which the plaintiff had under his care and attention during the time that the defendants were acting under said contract, that

?8—S C

that portion of the grove cultivated and cared for by the defendants developed much more rapidly and was in a much better condition at the time plaintiff assumed the care of the whole grove and canceled the contract sued upon than that portion which the plaintiff had been working exclusively." There was no error in such ruling. The quoted matter stricken from such plea was wholly irresponsive, irrelevant and foreign to any legitimate issue in the case, and furnished no sort of defense or palliation even for the breaches of contract complained of, and could serve no other purpose than to befog the real issues between the parties. Even if the plaintiff had seen proper to wholly neglect, desert and abandon an adjacent grove under his ownership or control, it could furnish the defendant with no sort of excuse for its alleged failure to carry out the terms of its solemn contract; neither could the manner and extent of the plaintiff's care and attention to an adjacent grove, not included in the contract, furnish any criterion for the manner and extent of the care and attention to be bestowed by the defendant upon the grove included in the contract, but the terms of the contract would be the only controlling guide. Another clause of the defendant's 4th plea which alleges damages accruing to the defendant's nursery stock from the spreading thereto of scale insects alleged to have been tortiously allowed by the plaintiff to accumulate on his grove trees adjacent thereto, and attempting to set-off or recoup such alleged damages against any injury to the plaintiff from the alleged breaches of said contract, was also stricken by the court and is complained of in the 2nd assignment of error. There was no error here. The matter so stricken was not responsive to the declaration, and alleged dam-

age growing, not out of breach of any contract, but out of tort. Unliquidated damages resulting from a tort cannot be made available as a set-off in an action for breach of a written contract. Hall v. Penny, 13 Fla. 621. A motion to strike the objectionable features of the plea was the proper way to remedy it, as the plea otherwise tendered a proper defense; a demurrer could not reach simply the defective parts of the plea, but would stand or fall as the plea was good or bad as a whole, a demurrer goes to the plea as a whole. Muller v. Ocala Found. & Mach. Works, 49 Fla. 189, 38 South. Rep. 64; State *ex rel.* Kittel v. Trustees I. I. Fund, 47 Fla. 307; 35 South. Rep. 986; Hooker v. Forrester & Burton, decided here at present term.

During the trial the defendant filed a fifth plea in which he particularly describes a portion of the land containing ten acres included in the contract and alleges that the same at the time said contract of lease was entered into and at the time said suit was brought was owned individually by a third party and that the plaintiff by his suit herein seeks to recover damages done to property owned by such third party. The plaintiff demurred to this plea and the court sustained such demurrer, and this ruling constitutes the third assignment of error. What has already been said in the discussion of the ruling of the court sustaining the plaintiff's demurrer to the defendant's first plea is fully applicable to this assignment and disposes of it adversely to the plaintiff in error. Had the suit been one not growing out of express contract, there might have been some merit in the contentions of this plea, but the suit is for alleged breaches of a written contract under seal between the plaintiff as landlord and his tenant in undisputed possession under such contract alone.

The fourth assignment of error complains of the court's permitting the plaintiff as witness to testify as to a certain map or plat of land described in the contract without first making proof that he was the owner of the property and entitled to recover for damages that might have been sustained by reason of any breach of contract. We find in the record that the plaintiff as a witness was permitted without objection from any source to testify with reference to a map or diagram of the land embraced in the contract. The objection to such evidence comes too late when made for the first time in an appellate court. When parties desire appellate review of the admissibility of evidence they must object to the evidence when offered, and, if admitted over their objection, must seasonably except to the ruling of the trial court; unless this is done the appellate court cannot consider it, as the party is deemed to have waived any objection to the admissibility of the evidence by permitting its introducton without offering objection thereto.

The defendant, pending the delivery of his testimony by the plaintiff as a witness in his own behalf, moved to strike the plaintiff's testimony wherein he referred to the land as being "his land," because the title deeds were the best evidence of ownership. This motion was denied and such ruling is assigned as the fifth error. There was no error here. The ownership of the land embraced in the contract sued upon was not an issue in the case, and the references by the plaintiff-witness to it as being "my land," was not for the purpose of proving ownership, but simply for the purpose of designating what particular parts of the land embraced in the contract had been neglected or injured by the alleged breach of the contract by the defendant.

The plaintiff offered in evidence a paper writing purporting to be the contract sued upon and made part of the declaration in the case. To its introduction the defendant interposed the following objections: "Because it is not shown that T. A. Winfield owned any such property as that described in this lease or that he could have been damaged by any violation of it; and on the further ground that the instrument offered in evidence does not appear to be the contract signed by the corporation; there is no seal affixed to the contract offered in evidence; the contract bears a stamp 'The Griffing Bros. Co.' It does not say 'by' anybody, and underneath is 'A. M. Griffing.' We acknowledge signing a lease, but we demand that they produce a lease duly signed by the corporation, and that they show first that T. A. Winfield is the person described in the lease, otherwise he could not have suffered damages." The overruling of these objections is assigned as the sixth error. There is no error here. As to the first objection placed upon the ground that it had not been shown that T. A. Winfield, the contracting lessor, owned the land involved, we have already held that the ownership of the land involved was not in issue and no issue in the case called for any proof of ownership of the land. As to the objection that it does not appear that the instrument offered in evidence is the contract signed by the corporation, it is not borne out by the facts. The instrument offered on its face purports to have been executed by the defendant corporation in its corporate name by A. M. Griffing, treasurer. It is true that there is not attached to it anything designated as being the corporate seal, but opposite the signature of T. A. Winfield there is in parenthesis the letters ("L. S."), and opposite the corporate

name attached there is also in parenthesis the letters
"L. S.," thus: (L. S.), with nothing else to indicate
whether that is the corporate seal or not.   This being
true and it not being challenged or denied that the paper
was signed for the corporation by its proper official, the
presumption is that it was duly executed, which presump-
tion includes the authenticity of what purports on the face
of the paper to be the seal adopted by the corporation.
Courts do not take judicial notice of the seals of pri-
vate corporations, nor do such seals prove themselves, but
where it is shown or admitted that the instrument is
signed for the corpoation by its proper officer the pre-
sumption is that it was duly executed, which presumption
includes the authenticity of the seal used in its execution.
10 Cyc. 1016 and 1017.   But besides this, so far as the de-
fendant corporation was concerned the instrument offered
here did not require its corporate seal to make it binding
on the corporation.   So far is it was concerned the obli-
gations devolved upon it by this contract were a matter
of simple contract that did not require its corporate seal
to make it binding.   The rule is now well established that
unless its charter or governing statute requires it a corpor-
ation may contract without the use of its corporate seal
in all cases in which individuals can bind themselves
without the use of a seal.   10 Cyc. 1006.   In addition to
all this the instrument offered in evidence was made a
part of the declaration in the case, and its execution was
not denied by any plea of the defendant corporation, but
on the contrary was admitted thereby.

The seventh assignment of error is that the court erred
in admitting in evidence numerous conversations between
M. Cobb and T. A. Winfield, M. Cobb not being a party to

the suit and no member of the defendant company being present. We might properly decline any consideration of this assignment as being too indefinite to apprise the court as to any particular conversation objected to, but the only conversations objected to with the Cobb mentioned that were not ruled out by the trial court were simply the detail to said Cobb by the plaintiff of complaints and objections as to how he as the representative of the defendant in charge of the work was performing the same, and of excuses offered by Cobb to the effect that the defendant company had given him too much to do down in that section to enable him to attend properly to the plaintiff's grove. It having been shown that Cobb was the representative of the defendant company in charge of the work called for by the contract with the plaintiff we see no objections to these conversations.

The eighth assignment of error is that the court erred in refusing to strike the testimony of T. A. Winfield as to his conversation with W. D. Griffing, wherein he said that W. D. Griffing purported to be the agent of defendant, and that his brother ——— Griffing had authorized him to make the contract. There is no merit in this assignment, the conversation complained of as evidence was a preliminary one had with W. D. Griffing antecedent to the making and execution of the contract sued upon, and led up to the making of such contract. It having been admitted that the defendant made the contract, it could have done it no possible injury to detail a preliminary conversation with an agent of the defendant company that led eventually to bringing the parties into contractual relations with each other, when the detail of such conversations was not designed and did not tend to affect,

modify or alter the terms of the contract actually entered into between the parties.

The ninth, tenth, eleventh and twelfth assignments of error complain of the admission by the plaintiff in evidence of four several letters written by the plaintiff to the defendant company on different dates complaining of its neglect of his grove, and detailing to them divers particulars wherein they were failing to comply with their contract with him. All of these letters were objected to on the ground that they were self serving declarations by the plaintiff to the detriment of the defendant. The court expressly cautioned and instructed the jury that these letters were admitted for the sole purpose of proving that the plaintiff gave the defendant notice and warning that he objected to the manner in which they were complying with their contract and that he did not acquiesce therein. Thus limited there was no objection to the admission of such letters, particularly when the same party who wrote them subsequently at the trial when under oath as a witness detailed·substantially the same short-comings of the defendant in the treatment of the grove as were set forth in said letters.

The thirteenth assignment of error complains of the court's permitting the plaintiff, as a witness, to testify as to a disease called "wither-tip" being allowed by the defendant to develop in his grove while the same was under defendant's care, there being no allegation in the declaration as to wither-tip. We find in the evidence of the witness T. A. Winfield in the record in his first examination in chief that he did testify as to the existence of a disease called wither-tip in his grove that developed there in consequence, as he testified, of the negligent treatment of his

grove by the defendant, and a description of the effects upon an orange tree of such disease, that he said was a fungus, but we fail to find that any of this evidence was objected to, or that the court was asked in any way to pass upon its admissibility, or that the court made any ruling upon its admissibility whatever. Upon the re-introduction of the same witness a second time in chief in describing the condition of his trees under the defendant's administration he stated: "I think I made myself clear that dieback and wither-tip were the same thing, though wither-tip is called dieback frequently and is a form of dieback now. It is a dying back of the limbs. In some cases it comes from diseased roots; foot-rot will cause it, and there is another kind of dieback that is supposed to be caused by fungus, and the name usually given to that is wither-tip." Here, the bill of exceptions states: "Counsel for the defendant renewed their objection to all evidence concerning wither-tip, which objection was overruled by the court upon the ground that the pleadings alleged the presence of dieback in said grove, and that wither-tip is a form of dieback." This is the first appearance in the record of any objection to such testimony and no ground of objection is stated. We might properly decline to consider an objection so general, particularly where it was interposed after all of the evidence objected to had already been deposed before the jury without objection. But there was no error in its admission. The disease testified about as wither-tip was shown by the evidence to have been one of the injurious results of the improper treatment of the plaintiff's grove by the defendant, and from their neglect of it, and was a proper detail of the injury resulting to the plaintiff from the alleged breach by the defendant of its

contract, and in alleging such injury it was not necessary that the evidence to establish it should be foreshadowed in detail in the pleadings.

The fourteenth assignment of error is not argued and will consequently be deemed to have been abandoned.

The fifteenth and sixteenth assignments of error are both predicated upon the general charge of the court given at the plaintiff's request. In the briefs filed here under the discussion of the fifteenth assignment of error it is contended that the charge defining the measure of damages applicable to the case was erroneous, and that this charge was further erroneous in instructing the jury that they could allow interest on the amount of damages, if any, sustained by the plaintiff from the date of the institution of the suit. The charge in reference to the measure of damages was as follows: "If you should find a verdict for the plaintiff on the first count of the declaration, and should find from the evidence that the plaintiff's land and the citrus trees growing thereon have been damaged by failure of defendant to perform its said contract, then you shall allow the plaintiff as damages such a sum of money as shall equal the difference, if any, between the value of the land on the 7th day of March, 1904, and what said land would have been worth on the 7th day of March, 1904, had the defendant in all respects complied with its contract."

The second count of the declaration claimed damages for the abandonment of the plaintiff's grove by the defendant on March 1st, 1904, and alleges and claims damages for the consequent care and attention to said grove by the plaintiff from that date to the time when said contract would have expired by its terms, March 25th, 1905. On this count the charge as to the measure of damage

was as follows: "If the jury find for the plaintiff on the second count, then they shall allow as damages the reasonable value, as shown by the evidence, of taking care of the said land planted in grove trees, and between which the defendant planted the nursery stock, during the period intervening between March 7th, 1904, and March 25th, 1905, and also the reasonable value of doing everything necessary for the development of said trees such as budding, pruning, spraying, etc., during said period," and the same instruction was given as to allowance of interest on the recovery, if any, on this second count.

The first of the quoted charges applicable to the first count of the declaration states the rule of damages in such a case correctly. Growing fruit trees are considered as part of the land, and where damages are claimed, as here, for breach of a contract to take care of and cultivate fruit trees growing upon land for a term of years, the difference between the value of the land at the date of the end of the term contracted for in the event the defendant had faithfully complied with his contract, and its lesser value at said date resulting from the failure of the defendant to comply with its contract, is the correct measure of damage in such a case as was substantially charged here. Shearer v. Park Nursery Co., 103 Cal. 415, 37 Pac. Rep. 412; Montgomery v. Locke, 72 Cal. 75, 13 Pac. Rep. 401; Shannon v. Hannibal & St. J. Ry. Co., 54 Mo. App. 223; Dwight v. Elmira, C. & N. R. Co., 132 N. Y. 199, 30 N. E. Rep. 398. In reference to the objection that these charges permitted the recovery of prospective damages that had not accrued at the time of the institution of the suit, the rule is that when a cause of action accrues there is a right, as of that date, to all the consequent damages which will

ever ensue. Such damages, without reference to the time they actually accrue, are entire and cannot be recovered piecemeal by successive actions, it is, therefore, often necessary to take into consideration damages that have not been actually suffered either at the commencement of the suit or its trial. 1 Sutherland on Damages (3rd. ed.), section 120 and citations. As to the instructions permitting the jury to allow interest on any damages they may find for the plaintiff from the date of the institution of the suit, this was proper, only the court might have gone further and permitted interest from the date of the termination of the contract. Jacksonville, T. & K. W. Ry Co. v. Peninsular Land, Transp. & Manuf'g Co., 27 Fla. 1, 9 South. Rep. 661.

Under the sixteenth assignment of error it is claimed that the judge erred in instructing the jury limiting their consideration of the letters written by the plaintiff to the defendant complaining of their treatment of his grove for any other purpose than to show that the plaintiff gave them notice therein of his dissatisfaction. This question has already been disposed of above in the discussion of the ninth, tenth, eleventh and twelfth assignments of error.

The seventeenth assignment of error is based upon the court's permitting the plaintiff to prove damages sustained and money expended in the care of the grove after the commencement of suit. The rule above stated as to the recovery of prospective damages disposes of this assignment adversely to the plaintiff in error.

The eighteenth assignment of error complains of the refusal of the court to give a charge, numbered 8, requested by the defendant. We cannot find any basis of fact in the record either in the pleadings or evidence, upon

which this charge could have been predicated, and no such basis is pointed out to us in the briefs or argument; there was, therefore, no error in its refusal, since charges to the jury must be confined to the issues and must be predicated upon facts in proof.

The nineteenth assignment of error is predicated upon the refusal of the court to give the following charge, requested by the defendant: "Where a contract provides for the doing of a certain action or the performance of a certain deed, but said contract does not specify when said act shall be done or performed, a reasonable time is implied, and if said act is performed within a reasonable time the terms of the contract in that particular has been fulfilled." Under the facts of this case the court committed no error in refusing to give this charge. The duties to be performed by the defendant under this contract, such as budding, spraying, transplanting and cultivating the plaintiff's orange trees required that such acts should be done at certain and particular times or seasons of the year, which would not permit of delay or procrastination, and it would have been error to instruct the jury that such acts could be done at any reasonable time.

The twentieth assignment of error complains of the refusal of the judge to give an instruction numbered 10, requested by the defendant. However correctly this instruction may have announced the law, yet its subject had been already substantially and fully covered by other instructions already given to the jury by the judge at the request of the defendant, and there was, therefore, no error in refusing to reiterate by giving this charge.

The twenty-first assignment of error is as follows: "The court erred in reprimanding the defendant's witness, A. M. Griffing, in the presence of the jury on account of the manner in which he was trying to answer the questions propounded on cross-examination by Col. Irwin, plaintiff's counsel, said reprimand being unwarranted and being in the nature of a comment on the weight of the testimony made in the presence and hearing of the jury." The facts forming the basis of this assignment are as follows: The defendant's witness, A. M. Griffing, while under cross-examination, after stating that he had had a conversation with the plaintiff, T. A. Winfield, was asked by the plaintiff's counsel to state what that conversation was, or his idea of it, in reply to which the witness answered: "I ask for the letter to be brought up," and upon being repeatedly told by plaintiff's counsel that he wanted his recollection of that conversation, without reference to any letter, the witness persistently refused to answer the question, but instead of giving the conversation, inquired for, persistently demanded the letter that he wanted, and after being given the letter that he wanted the witness proceded to answer as follows: "Well, in regard to the conversation, this letter," whereupon he was stopped by plaintiff's counsel, who repeated again that he didn't care for that letter, but that he was asking for the conversation, whereupon the court addressed the witness as follows: "You have read that letter to refresh your memory. If you say you had a conversaion with Mr. Winfield, now, then, tell what that conversation was without respect to the letter." Upon which the witness again proceeded to answer as follows: "When this letter was received by me, forwarded from the Jacksonville office." The witness was here again stopped by

plaintiff's counsel, who appealed to the court to make the witness answer the question. Whereupon the witness proceeded to tell about going up to his nursery and there seeing one Ed Reed, and taking him in the buggy with him, when plaintiff's counsel again insisted on the witness giving the conversation with Winfield, upon which the judge said: "Yes, tell what the conversation was between you and Winfield." Whereupon the witness again proceeded to answer as follows: "Well, I took Ed Reed up to the house where Winfield was." Whereupon the court addressed the witness as follows: "Mr. Griffing, I have asked you to tell what that conversation was, and I am not going to coach you any more. You tell what that conversation was, or else I will adjourn this hearing until I have an opportunity of dealing with you about it. You understand what the court says and what is wanted." Whereupon the defendant's counsel interposed the suggestion that if the conversation took place in the presence of Mr. Reed.—Whereupon the court interrupted counsel and said: "This witness understands what is wanted. He can tell the conversation if he remembers it, if he can't remember it he can say so." Here the defendant's counsel excepted to the court's so reprimanding the witness. There is no merit in this assignment. The reprimand of the witness was proper under the circumstances, and there was nothing in any of the remarks of the court that tended in the slightest to be a comment on the weight or credibility of any evidence in the cause, or that reflected upon the credibility of the witness himself, but it was a proper reprimand of the witness only for his persistent refusal to give a direct answer to a proper question propounded to him.

The twenty-second and last assignment of error is predicated upon the denial of the defendant's motion for new trial made upon the ground that the verdict of the jury was contrary to law and the evidence, and was not supported by a preponderance of the evidence. As to the law of the case we have in what has been already said disposed of this feature of this assignment. The evidence is voluminous and conflicting, but the jury have given their credence to the side of the plaintiff, and there is nothing shown in the record that would warrant this court in disturbing their settlement of such conflict.

Finding no error the judgment of the court below in said cause is hereby affirmed at the cost of the plaintiff in error.

HOCKER and PARKHILL, JJ., concur;

SHACKLEFORD, C. J., and COCKRELL and WHITFIELD, JJ., concur in the opinion.