C. J. BRYAN, *Plaintiff in Error,* v. ST. ANDREWS BAY COMMUNITY HOTEL CORPORATION, a Corporation, *Defendant in Error.*

En Banc.

Opinion filed January 28, 1930.

134

*Stokes, Phillips & Douglas,* and *James N. Daniel,* for Plaintiff in Error;

*J. M. Sapp,* for Defendant in Error.

DAVIS, Commissioner:

St. Andrews Bay Community Hotel Corporation, a corporation, instituted an action to recover an unpaid balance of subscription contracts for stock in the said corporation against C. J. Bryan, the defendant. The declaration contains two counts and each count alleges that the defendant entered into a written contract and agreement with the plaintiff wherein and whereby the defendant subscribed for and agreed with the plaintiff to purchase of and from the plaintiff a certain number of shares of 8% preferred stock of the plaintiff of the par value of $100.00 per share, for which he agreed to pay at the times and in the amounts therein set out and wherein and whereby it was agreed that:

"The certificates of such shares of stock so subscribed for, which the defendant agreed to purchase of and from the plaintiff, shall be delivered to the defendant by the plaintiff only when the full purchase price of said shares of stock shall have been paid, to the plaintiff, and wherein and whereby it was agreed that in the event of the defendant's failure to pay any of the installments or any part thereof at any of the several times when the same shall become due and payable, or within thirty (30) days thereafter, that the entire amount remaining unpaid should immediately become due and payable; that the plaintiff now is and at all times has been ready, able and willing

to deliver said stock certificates when said sums of money mentioned in said written agreement and contract are paid by the defendant, but that the defendant has failed and refused and still fails and refuses to pay said sums of money mentioned therein as the purchase price of said certificates of stock'';

That

"Each and all of the remaining of said installments are now past due and unpaid; and are now due and owing to the plaintiff by the defendant; and that interest thereon at the rate of eight per cent. (8%) per annum from date of said promise, agreement and contract until paid, is also due and owing to the plaintiff-corporation by the defendant, according to the terms and tenor of said written promise, agreement and contract."

Copies of the said contracts are attached to and made a part of the declaration. The defendant filed two pleas to the declaration, the first of which is in words and figures as follows:

"That the plaintiff solicited and requested this defendant to subscribe for the preferred capital stock of the plaintiff mentioned and described in the agreement attached to the declaration as exhibits "A" and "B"; that prior to and at the time of the execution of said exhibits "A" and "B" by this defendant, the plaintiff represented to the defendant that it was the purpose and intention of the plaintiff to issue preferred stock of the plaintiff in the sum of $450,000.00 and that from the proceeds of the sale of such stock that the plaintiff would erect in Panama City, Florida,

a hotel and that the total cost of said hotel, which cost included promotion expenses, site, building, furniture and furnishing and all other expense incident to the erection of said hotel, would not exceed the sum of $450,000.00; that the aforesaid representation was a material representation and in and by such representation it was agreed by and between the defendant and the said plaintiff that the said cost of such hotel should be fully paid from the sum of $450,000.00. The defendant further avers that in and by the aforesaid representation and the said agreement the defendant, in making his said stock subscription, relied upon the fact that the said cost of the said hotel should not exceed $450,000.00, and that there would be no expense incurred for said hotel in excess of $450,000.00 and that it was the purpose of the plaintiff to pay the said cost of said hotel from stock subscriptions and that when said hotel was complete and $450,000.00 expended therefor, there would not be any further indebtedness in favor of any creditors of the said plaintiff; and that the said representation and agreement was a material consideration to defendant for making said stock subscription, and became and was a part of the contract between defendant and plaintiff whereby defendant agreed to subscribe to the capital stock of plaintiff.

"It is further shown that a hotel has been constructed in Panama City, Florida, by the plaintiff and same has been completed, which is the hotel for which the said stock subscription was made, but the cost of said hotel including promotion expense, site, building, furniture and furnishing and all other expense incident to the erection of said hotel, is far in excess of $450,000.00, and is more than $125,000.00 in excess

of the proposed cost of $450,000.00; that the said excess expenditure is due and payable to various creditors of the plaintiff and the said creditors have a claim against the plaintiff and the said hotel superior in dignity to any claim to the defendant as a stock holder and the said excess indebtedness is unpaid and the action of the plaintiff in expending more than $450,-000.00 is a breach of the agreement made between this defendant and plaintiff and this defendant is not further liable on the said stock subscription and·has been discharged therefrom on account of the said breach.

"That the payments made by this defendant on October 15, 1925, in the sum of One Thousand Dollars and on December 15, 1925, in the sum of Five Hundred Dollars under said exhibit "A" and the payments made on October 15, 1925, in the sum of Two Hundred Dollars and on December 15, 1925, in the sum of One Hundred Dollars under said exhibit "B", were made by this defendant prior to the construction of the said hotel and without any knowledge on the part of the defendant that the said representation and agreement of the plaintiff had been or would be breached."

The second plea is in all respects similar to the first plea, except that it alleges that the subscription was solicited by the plaintiff "through its agent" and that the subscriptions were accepted with the knowledge that the agent had made the representations and agreements set up in the said plea and had brought the action with such knowledge and thereby ratified and approved the representations and agreement. To each of the pleas, the plaintiff demurred upon the following grounds:

"(a) Because said plea is vague, indefinite and un-

certain and sets up no legal defense against the action of the plaintiff.

"(b) Because said plea undertakes to allege and plead prior verbal understanding and condition to the cause of action on a written contract executed subsequent to the alleged verbal understanding and condition.

"(c) Because the alleged prior verbal representation, if made, constitutes no legal defense to the cause of action upon the written contract subsequently executed when such conditions were not incorporated in and made a part of the written contract.

"(d) Because said plea does not allege an actual cost of the hotel itself exceeding the amount specified as that stated in the verbal representations prior to the execution of the written contract, which plaintiff is unable to pay and cannot pay without subjecting said hotel and its equipment.

"(e) Because said plea fails to allege and show any facts which show or tend to show a failure of the consideration for which the note and obligation sued upon was given."

This demurrer was sustained and the case went to judgment for the plaintiff. The ruling upon the demurrer was assigned as error and this assignment of error is the only one argued in this Court.

It is stated by both parties hereto that the sole question involved is whether or not the pleas state a defense.

The plaintiff in error recognizes the parol evidence rule, which forbids any addition to or contradiction of the terms of a written instrument, by testimony purporting to show that at or before the signing of the paper, further or different terms were orally agreed upon by the parties. He

contends, however, that the instrument is not a sufficiently complete contract on its face but that parol evidence will be received to show that it was orally agreed between him and the company that the total cost of the hotel, including promotion expenses, site, building, furniture and furnishing and all other expense incident to the erection of said hotel, would not exceed the sum of $450,000.00, and that the said costs should be fully paid from said sum, which said oral agreement, he contends, does not contradict or alter the written contract.

Plaintiff in Error, frankly and properly admits in his brief that the facts set up in the pleas do not show fraud. He further admits that he was "bound when he executed and delivered the subscription contract, and remained bound thereon until the defendant in error breached the contract," by completing a hotel including promotion expenses, site, building, furniture and furnishing at a cost of $125,000 in excess of the said sum of $450,000.00, and he alleges that by reason of such breach, he is no longer bound by the contract expressed in the writing considered in connection with the alleged collateral oral agreement.

The charter or certificate of incorporation of the plaintiff was not made a part of or referred to in the pleas, and inasmuch as defendant does not defend upon the ground that a charter provision was breached when the cost of the hotel exceeded $450,000.00, we assume that when the company completed the hotel at a cost in excess of the said sum of $450,000.00, it was acting within its charter powers.

The powers of a corporation are defined by law and by its articles of incorporation and are matters of public notice, (Helliwell, Stock and Stockholders, page 95) and the subscriber to the capital stock of a corporation is in general bound to know the legal effect of his subscription.

(1 Cook on Corporations, 7th Ed., Sec. 54.) It has been repeatedly held that the law existing at the time and place of the making of a contract is as much a part thereof as though it were expressed therein. Mitchell v. Doggett, 1 Fla. 356; Hayward v. LeBaron, 4 Fla. 404; State v. Tampa W. Co., 56 Fla. 858, 47 So. R. 358; McCaskill v. U. N. S. Co., 59 Fla. 571, 52 So. R. 961; State v. Pinellas Co. P. Co., 87 Fla. 243, 100 So. R. 504; 14 C. J. 558. Upon the same principle, the articles of incorporation or charter of a corporation becomes a part of and must be read into, as if set out therein, every subscription contract for shares of stock in a corporation.

Whatever may be the form or language of a subscription to the stock of an incorporated company, any person who in any manner becomes a subscriber for or engages to take any portion of the stock of said company, thereby assumes to pay for the same according to the conditions of the charter. 1 Thompson Corporations (2nd Ed.) 672.

The same author on page 655 says:

"The contract by which the stockholders are bound to the corporation and by which they are bound together is set out in the charter, or in the articles of association, executed by the incorporators or subsequently signed by the subscribers for stock."

And in Morawetz on Private Corporations, Section 43, it is said that:

"The members of a corporation formed for pecuniary profit are ordinarily called shareholders, or stockholders, and the contract by which they are bound together is set forth in a charter, or in articles of association agreed to in pursuance of a general incorporation law."

We see, therefore, that the articles of association are a necessary part of every contract of subscription for stock in a corporation. When the plaintiff in error signed the subscription contracts, he in effect signed the charter, and, as stated in Johnson v. P. & G. R. R. Co., 9 Fla. 299, said to the corporation: "You are authorized by me to do anything which said charter empowers you to do, and I will abide by it."

Since the defendant does not defend upon the ground that the plaintiff in expending upon the hotel the sum of $575,000.00, breached a provision of the charter, we might assume that the power to expend said sum was expressly conferred upon the corporation by its charter. The pleas are bad because they lay the foundation for the introduction of parol testimony to vary or contradict the written contract. Booske v. Gulf Ice Co., 24 Fla. 550, 5 So. R. 247; Griffing Bros. Co. v. Winfield, 53 Fla. 589, 43 So. R. 687.

"A subscriber for stock in a corporation 'impliedly contracts that he will subject his interests therein to the will of the majority, so long as the majority confines itself within the limits prescribed by the corporate charter, * * * Were it otherwise, undue power would be placed in the hands of a single stockholder. In the origin of an enterprise, it is impossible to foresee what contingencies may arise, and what changes may become necessary in order to secure the successful prosecution of the corporate purpose.' Helliwell, Stock and Stockholders, Sec. 265, p. 503."

In recent years, private business corporations have become numerous, and we dare say that there are but few business men who have sufficient acumen to appreciate the

wisdom of combining the capital of many in putting over a project that cannot otherwise be promoted, who do not know that the policies of a business corporation within the legitimate sphere of its operations, are originated and directed by the majority in interest and if a prospective subscriber for stock is not willing to become a party to such an arrangement, he should steer clear of subscription contracts. In other words, he should look well before he leaps.

The plaintiff in error does not contend that it was incumbent on the defendant in error to complete the hotel including promotion expenses, site, building, furniture and furnishing and all other expense incident to the erection of said hotel, as a condition precedent to his subscription contract becoming effective and binding upon him. In fact, he admits he made a valid subscription contract, but contends that he is discharged from the contract because the corporation breached the alleged oral agreement, which was a "subscription upon special terms."

We find that a subscription upon a condition subsequent, sometimes designated, "subscription upon special terms" is a contract of absolute subscription on the part of the subscriber, coupled with a contract on the part of the corporation that it will perform certain stipulated acts. (Helliwell, Stock and Stockholders, p. 81; 2 Clark & Marshall's Private Corporations, Secs. 465-6, 456) and it renders him absolutely liable to pay the amount thereof according to its terms, from the time it is accepted. (2 Fletcher, Corporations, Sec. 601, p. 1311.) The failure to perform the conditions prescribed, does not therefore give to the subscriber the right to maintain an action for the cancellation of his subscription, nor where an action is brought for the enforcement of his subscription, may he set up as a defense the failure of the corporation to per-

form. Helliwell, Stock and Stockholders, p. 98, 94; 1 Thompson, Corporations, 761.

It is not made to appear in the instant case that the corporation has the power to accept subscriptions upon terms, but if it were so made to appear, and that the corporation failed to perform, the subscriber's remedy would be an action for the recovery from the corporation of the damages he suffered by reason of the non-performance. Helliwell, Stock & Stockholders, p. 98; 2 Clark and Marshall's Private Corporations, Sec. 466; Warren Co. Co-op. Ass'n v. Boyd (N. C.) 88 S. E. R. 153; 2 Fletcher Corporations, Sec. 646; Spratling v. Westbrook, 140 Ga. 625; Bobzin v. G. B. Valve Co., 140 Ia. 144, 118 N. W. R. 40; Bucksport v. Inhabitants of Brewer, 67 Me. 295; Morrow v. N. I. & S. Co., 87 Tenn. 262, 10 A. S. R. 658.

Plaintiff in error has cited to us the cases of Chamberlain v. Leslie, 39 Fla. 452, 22 So. R. 736; Waters v. Sou. A. Co., 67 Fla. 440, 65 So. R. 457; Milton v. Burton, 79 Fla. 266, 84 So. R. 147, with the comment that, "The general rule as to receiving evidence of parol collateral agreements, obtains in this State."

We recognize the rule stated in these cases as being sound, but inapplicable to the instant case. There is nothing on the face of the subscription contract to indicate that all of the engagements of the parties with reference to the payment for stock was not in writing. Indeed that element of the contract is not only dealt with, but is fully covered by the writing wherein the plaintiff in error without proviso or condition, agreed to pay fixed amounts at definite times until the stock is paid for in full. The promise of the plaintiff in error is so precise and definite as to how the stock is to be paid for, there is nothing to be explained. Any separate or secret agreement made at the time of or prior to the subscription, inconsistent with the

contract of subscription would be a fraud on other subscribers for stock and void. 1 Thompson on Corporations (2nd ed.) p. 765-7, 683.

There are two early Florida cases which are conclusive, as to the question involved in this case.

In Martin v. P. & G. R. R. Co., 8 Fla. 370, plaintiff instituted an action of assumpsit to recover the amount of a subscription for stock in the said company. The defendant pleaded non-assumpsit, and, by agreement of the parties all substantial defenses were to be admitted under that plea. The defendant offered to prove by his witness ''the inducements and circumstances which led to the subscription'' which was objected to, and the objection sustained, to which ruling an exception was taken. This Court held that this exception was not well taken upon the principle that such evidence is inadmissible to vary the terms of a subscription to stock of a railway, unless it tend to show fraud or mistake, and the opinion states:

''There was no pretense, even in argument, that there had been any fraudulent misrepresentations made to the defendant to induce him to become a subscriber to the stock of this company, or that he had made his subscription under a mistake as to the terms of the charter of incorporation.'' (Text 383.)

See also Johnson v. P. & G. R. R. Co., 9 Fla. 299.

But plaintiff in error in his brief says: ''The difficulty with these cases is that the terms of the written subscription are not set out and the exact facts to be proved by the parol testimony are not shown.'' This statement is justified by the cited cases, but the conclusion is inevitable that it was the opinion of the Court that testimony as to any inducement or circumstance leading to a subscription of stock should be excluded, ''unless it tend to show fraud

or mistake.'' This language would imply that no defense not based upon fraud or mistake can be offered in such cases, where the making of the contract is admitted, that is dependent upon proof by parol evidence of the inducement or of the circumstances that led up to its execution. See also 14 C. J. 577-8.

The Circuit Court committed no error in sustaining the demurrer to the pleas. The judgment to which the writ of error was taken is affirmed.

PER CURIAM.—The record in this cause having been considered by the Court, and the foregoing opinion prepared under Chapter 14553, Acts of 1929, adopted by the Court as its opinion, it is considered, ordered and adjudged by the Court that the judgment of the court below should be, and the same is hereby, affirmed.

TERRELL, C. J., AND WHITFIELD, ELLIS, STRUM, BROWN AND BUFORD, J. J., concur.

BRY-CO DEVELOPMENT COMPANY, a Corporation, *Plaintiff in Error*, v. ST. ANDREWS BAY COMMUNITY HOTEL CORPORATION, a Corporation, *Defendant in Error*.

En Banc.

Opinion filed January 28, 1930.

*Stokes, Phillips & Douglas* and *James N. Daniel,* for Plaintiff in Error;

*J. M. Sapp,* for Defendant in Error.